## NEW ENGLAND LOAN & TRUST COMPANY, Appellant, v. BROWNE et al.

### Division One, June 12, 1900.

1. **Decree:** RESPONSIVE TO FINDING: DEFAULT IN MORTGAGE DEBT. Where the sole allegation in the cross-bill, in a suit for possession of land, is that there was no breach in the conditions of the deed of trust under which plaintiff claims title, a finding that the plaintiff received payments of interest on the mortgage note, is not responsive to the pleading, and is not sufficient to sustain a decree vacating the trustee's sale and deed.

2. **Deed of Trust:** DEFAULT: EXTENSION OF NOTE: PLEADING. Under a general denial to plaintiff's suit for possession of land bought by him at a foreclosure sale of a deed of trust, the defendant can show that there was no breach in the conditions of the deed of trust, although it and the statute made the recitals of the trustee's deed *prima facie* evidence of their truth. But under an allegation in the cross-bill that there had been prior to the sale no default in the

terms and conditions of the obligations mentioned in the deed of trust, the defendant can not show that the time of payment of the obligation was extended by a new agreement.

3. ————: EXTENSION OF TIME OF PAYMENT: AGENCY. The grantor in a deed conveying his equity of redemption agreed to have the time of payment of a mortgage debt extended five years if the grantee should desire it. Sometime thereafter the grantee was notified by a letter from the mortgagee that the debt would soon become due, and if he desired to make any arrangements to extend it, to call at the mortgagee's office. Thereupon the grantee called upon the mortgagor and reminded him that he had agreed to keep the interest paid on the debt (and he had received money from the grantee for that purpose), and the mortgagor promised to go at once and attend to it. The grantee gave no further attention to the matter, did not inquire for over a year whether the mortgagor had paid the interest, but on being notified by the mortgagee that the note was long past due and must be paid, he then for the first time called on the mortgagee and found the interest for more than a year unpaid. *Held*, that there was nothing in this evidence to establish the allegation that the mortgagor was the agent of the mortgagee for the purpose of making the agreement to extend the time for paying the debt, and there was nothing in the agreement that prevented the 'mortgagee from legally foreclosing the deed of trust.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

REVERSED AND REMANDED (*with directions*).

*Botsford, Deatherage & Young* for appellant.

(1)   There is absolutely no evidence in this case that either W. B. Sexton or E. P. Sexton was the agent of plaintiff in respect of the $1,800 bond and note in controversy, or in respect of the deed of trust given to secure the same.   (2) There is no evidence in this case tending to prove that either W. B. Sexton or E. P. Sexton had any authority to extend the time of payment of said $1,800 bond and note from the first day of June, 1894, on which day said bond and note matured and became due.   (3)   Therefore said trustee's sale by Trustee Hall to Gilbert nearly two years after the maturity

of the $1,800 bond and note was valid, and the deed from Gilbert to plaintiff conveyed the title to plaintiff and entitles plaintiff to recover.

*Byron Sherry* and *Kagy & Bremermann* for respondents.

VALLIANT, J.—This is an action of ejectment for two lots in Kansas City. Plaintiff's title is derived through a deed of trust executed by Mina Sexton and Warren Sexton, her husband, to John C. Hall, trustee with power to sell, to secure a bond for $1,800 and interest coupons made by them to the plaintiff, and the trustee's deed foreclosing the deed of trust.

The defendant set up in his answer what was intended to be an equitable cross action attacking the validity of the trustee's sale and the case was tried on that issue. This answer states that the plaintiff's title is the deed of trust and the trustee's deed, and avers, that the latter is void because by the terms of the deed of trust the trustee was only authorized to sell in case the grantors were in some default as to its conditions, and "that at the time of the advertising and selling of said premises by said trustee the grantors in said trust deed were not in default of the terms and conditions of said trust deed or any part or portion of the terms and conditions thereof." That is all there is of the affirmative defense.

Upon the trial the plaintiff introduced in evidence the deed of trust dated May, 1889, the $1,800 bond due June 1, 1894, and past due interest coupons, which deed contained among other things a clause to the effect that any recital in the deed to be made by the trustee thereunder should be taken *prima facie* as true; a deed dated 28th March, 1896, from the trustee to Gilbert, reciting default in payment of the bond, a request by the holder to foreclose, advertisement and sale according to the terms of the deed of trust, and the purchase by Gilbert at the sale; an affidavit showing publication

of notice; then a deed from Gilbert to the plaintiff, dated March 30, 1896; then certain deeds showing defendant's title derived from the same source, but junior to plaintiff's; then testimony showing the monthly rental value of the property, and rested. Defendant introduced a written contract between E. P. Sexton and himself and wife, dated September, 1891, whereby Sexton agreed to sell to defendant's wife the land in suit for $2,200, for which sum defendant and his wife executed their promissory note, and they also assumed and agreed to pay the $1,800 bond secured by the plaintiff's deed of trust, making the price of the land to defendant and wife $4,000 principal. The $2,200 note was payable in monthly installments of $25 each and secured by deed of trust on the property. At the time of executing this contract Sexton executed his warranty deed conveying the land to defendant's wife and they executed their note for the $2,200 and deed of trust, and all these documents, as provided by the terms of the written contract, were deposited in a bank in escrow to be delivered when Sexton should obtain a title by foreclosing an intervening incumbrance which he agreed to do, and which he afterwards did, and the documents were delivered respectively. In the written contract Sexton agreed that if defendant so desired he would procure the plaintiff's $1,800 incumbrance extended for five years without expense.

The whole force of the defense centered in the proposition that Sexton was the agent of the plaintiff and had authority to make that agreement for extension.

The testimony of defendant tended to show that after he purchased from Sexton the plaintiff had notice of the fact and when the interest on plaintiff's debt came due notice thereof was sent to defendant Browne. Browne paid his $25 a month to Sexton and supposed Sexton was paying the interest to plaintiff and in point of fact Sexton did so up to about November, 1894, after which he paid nothing, although de-

fendant Browne continued to pay him the monthly installments up to November 1, 1895. Browne testified that it was understood between him and Sexton that out of the monthly installments Sexton would first pay the interest falling due on plaintiff's debt and apply the balance on the $2,200 note. But the written agreement contains nothing of that kind; it calls for $25 a month to be applied on the $2,200 note, and defendant to pay the plaintiff's debt. Defendant testified that in May, 1894, he received a letter from plaintiff "notifying me that the note of $1,800 would soon be due, and to call in and make some arrangement for extending it, pay a little on the note and they would be satisfied to extend it. I immediately took the letter to E. P. Sexton and showed him the letter, and I says, 'You remember your agreement?' He says, 'Yes I will fix that all right; I will go right up and attend to it.' And that is the last I heard of it until I received this letter of February 20, 1896, from the New England Loan and Trust Company, and I went up to see about it.

"Q. Whom did you see? A. I saw Mr. Gilbert, and I may have seen Mr. Hall, too; I also saw Mr. Alexander.

"Q. Who was Mr. Gilbert? A. He is one of the officials of the New England Loan & Trust Company, I think secretary or assistant secretary.

"Q. State what occurred between you and him? A. Why, he told me that note was long past due and the interest past due. I told him that could not be possible, because Mr. Sexton had assured me it would be extended at the time it came due; and I said, 'When you wrote me last May, I took it for granted that it was all right as I have been making my payments to Mr. Sexton right along, and from your communication I was led to believe that everything was going along smoothly.' Then I made a note of the amount of interest on the note: 'Balance due, $22, December 1, 1894; $72 balance due June 1, 1895; $72 balance due December 1, 1895.'

"Q. Prior to that time you had been paying Mr. Sexton right along according to your contract? A. Yes, sir; prior to the 20th of February, 1896.

"Q. When you called Mr. Gilbert's attention to that fact what did he say about it? A. Mr. Gilbert said Sexton was doing some mighty peculiar things; that he hadn't paid them the money. I then asked him the question why it was that he had allowed the interest to run that long, as it was unusual to allow interest to run over a year and a half without saying anything about it. 'Well,' he said, 'they were dealing with Mr. Sexton.'

"Q. He said they were dealing with Mr. Sexton? A. Yes, sir; or words to that effect; I do not mean to give the exact words."

The only evidence, if it may be so called, of the fact that Sexton was the agent of the plaintiff is the testimony of defendant that Sexton told him so. This was objected to but upon the promise that other evidence of agency would be introduced the court ruled that what Sexton was said to have said would be received. Then when the plaintiff's counsel asked the defendant on cross-examination upon what he based his assumption that Sexton was the plaintiff's agent, he said that Sexton had acted as agent for the plaintiff in connection with some lawsuits before the defendant as justice of the peace. The plaintiff's evidence as to those lawsuits was that Sexton was connected with a concern that acted as real estate agents, and had procured tenants for plaintiff for some houses it owned, and the plaintiff had one or more suits in the justice court to collect the rents from these tenants, and Sexton attended to those suits.

Against the theory of agency was the testimony of the chief officers of the plaintiff in Kansas City who had charge of its business there, to the effect that Sexton had never been its agent except that he attended to the rent suits above mentioned; that the plaintiff had an office in Kansas City con-

ducted by its own officers and clerks, who transacted all its business relating to loans and their collections, and that this $1,800 bond had always been in the custody and in charge of the office.

The court made a special finding\for defendant, upon which it based a decree vacating the trustee's deed under which plaintiff holds, without prejudice to plaintiff's right to future foreclosure. The special finding is: "Doth find from the evidence that E. P. Sexton was the agent for the plaintiff in the management of the property in controversy, to-wit: [describing it] and for the collection of whatever might be due upon the $1,800 note; that said Sexton received payments upon said note as the agent of the plaintiff and the plaintiff is bound by said Sexton's action; it is therefore considered," etc. From that decree the plaintiff appeals.

I. The special finding upon which the decree is based is not responsive to the issues in the pleadings. The sole allegation in the cross bill is that there was no breach in the condition of the deed of trust. The fact that Sexton as agent of the plaintiff received payments on the note, which is all there is of the finding, does not negative the facts that the principal of the debt is due and unpaid and therefore the condition of the deed of trust is broken. Therefore the finding is not sufficient to support the decree.

II. There are really no facts stated in the answer that constitute an affirmative defense or an equitable cross action. The plaintiff claiming under a deed of trust and a foreclosure sale, is compelled to prove that the conditions of the deed of trust were broken before his trustee's deed can be received in evidence. In this case he proves those facts *prima facie* by the recitals in the trustee's deed, because the statute section 7103, Revised Statutes 1889, and the deed of trust itself, make the recitals *prima facie* evidence of their truth. But they are only *prima facie* evidence, and under a general denial the defendant could introduce evidence to show that the

conditions were not broken.    Besides, to state that the gran-
tors in the   deed of trust were not in default and no condi-
tion was broken is to state a conclusion, not a fact. But even as
a conclusion it only means that the grantors have done what
they agreed to do, that is, that they have paid the debt.    The
effort of the defendant on the trial was to show not a per-
formance on the part of the grantors in the deed of trust of
their obligation, but a new agreement whereby the time for
the performance of the obligation was extended five years;
but the answer set up no such new agreement and therefore
defendant was not entitled to prove it, even if he could have
done so.

III.    Lastly there was no evidence that Sexton was the
agent of the plaintiff or that he assumed as such to make
this alleged agreement of extension.    The evidence of the
written contract is that he assumed on his own responsibility,
if defendant should desire an extension for five years of the
$1,800 debt, to "procure the same without increased expense
to said second parties." It was Sexton's personal obligation
to procure· it to be done, which necessarily implied that he
could not do it himself.    Even if Sexton was agent for the
plaintiff he was not professing to so act in this transaction,
but was trading on his own account.    Whatever considera-
tion there was for the agreement to extend, enured, not to
the plaintiff, but to Sexton.    According to defendant's own
testimony if he had ever been blinded by Sexton's misrepre-
sentations as to agency, he had his eyes opened as early as
May, 1894 when he received a letter from the plaintiff call-
ing his attention to the fact that the debt was soon to fall due
and if he desired to make any arrangement to extend it he
was invited to call at the plaintiff's office and attend to it.
That letter was a warning to him if he had ever trusted in
the assumed agency of Sexton that his confidence was mis-
placed.    But instead of replying to the plaintiff's letter he
went again to Sexton ·and according to his testimony  was

again lulled into security by Sexton's telling him that he could go immediately to the office of the plaintiff and attend to it.   If Sexton was the plaintiff's agent with power to grant this extension or if he had made the defendant believe that he was such agent why did he not in that capacity, or assumed character, then and there make the agreement with defendant to extend the note, why tell him he would go immediately and have it done?   Defendant thereby had notice that up to that time no agreement to extend had been made and that if it was to be made it would have to be with the plaintiff's business manager in its office, yet he went away trusting to Sexton's promise to attend to it, and allowed more than a year and a half to pass without ever inquiring if it had been done, while he was living in the same city in which the plaintiff kept its office to which he had been invited to come in reference to the business.   Then in February, 1896, he was awakened again by a letter from the plaintiff telling him that the note was long past due and must be paid and then for the first time he went to the plaintiff's office and says he was much surprised to find things as they were.

Some significance seems to have been given to the fact that the Sextons (there were two of them), paid the interest on the note to plaintiff during the period in which it was paid.   But that was in regular business course.   The two Sextons were in business together, W. B. Sexton and wife were the makers of the $1,800 note and interest coupons; as between them and the plaintiff they were the principal debtors, plaintiff had a right to look to them for payment and they had a right to take up the interest coupons and hold them against the defendant if he was liable under the written contract, above mentioned with E. P. Sexton, as to which we express no opinion.   If the defendant had been misled to his disadvantage in this matter it has been through no fault of the plaintiff.

The judgment is reversed and the cause remanded to the

circuit court with directions to empanel a jury to assess the damages of plaintiff for detention of the property and its monthly rental value or if the parties waive a jury to make such assessment itself and render judgment for the plaintiff for possession of the property and the damages and rental value until possession is given.

All concur.